**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

ALL AMERICAN SEMICONDUCTOR, INC.,

Plaintiff,

vs.

WELLS FARGO MINNESOTA, N.A., National Association,

Defendant.

Civil No. 01-1441 DDA/FLN

**ORDER ON DEFENDANT WELLS FARGO MINNESOTA'S MOTION TO DISMISS**

---

Leonard, Street and Deinard, by ROBERT P. THAVIS, Minneapolis, Minnesota, and Bilzen Sumberg Dunn Baena Price & Axelrod, LLP, by ROBERT W. TURKEN, Miami, Florida, appeared on behalf of Plaintiff All American Semiconductor, Inc.

Lapp, Libra, Thomson, Stoebner & Pusch, Chartered, by RICHARD T. THOMSON, Minneapolis, Minnesota, appeared on behalf of Defendant Wells Fargo Minnesota, N.A.

---

This case involves determining the sufficiency of a documentary presentation to draw upon a letter of credit. Plaintiff All American Semiconductor, Inc. ("All American") was the beneficiary under a letter of credit Defendant Wells Fargo Minnesota, N.A. ("Wells Fargo") issued to KB Gear Interactive, Inc. ("KB Gear"). All American attempted to draw upon that letter of credit after KB Gear failed to pay some of All American's invoices. Wells Fargo rejected All American's documentary presentation as not conforming to the requirements of the letter of credit. All American then brought this suit against Wells Fargo to obtain payment, alleging claims for breach of contract and for wrongful dishonor. Federal jurisdiction is predicated upon diversity of citizenship, and the parties agree that the substantive law of Minnesota applies in the case. Wells Fargo has moved to dismiss both claims pursuant to Fed.R.Civ.P. 12(b)(6). For purposes of such a motion, the Court must accept as true all facts pleaded in the Complaint as well as reasonable inferences flowing from those facts. DuBois v. Ford Motor Credit Co., 276 F.3d 1019, 1021 (8th Cir. 2002). Dismissal is appropriate only if no relief can be granted on any set of facts that the plaintiff could prove consistent with the allegations of the Complaint. Id. at 1022. For the reasons stated in this Order,

FILED MAR 0 7 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

the Court will grant Wells Fargo's motion to dismiss the breach of contract claim[1] and will deny Wells Fargo's motion to dismiss the wrongful dishonor claim.

I.

Wells Fargo issued standby letter of credit number S407707 (Complaint Exhibit A, hereinafter "the LOC") to KB Gear on June 7, 2000. The LOC names "All American Semiconductor" at a Miami address as the beneficiary. The "maximum" amount available under the LOC was $1.5 million. The LOC specifically provides that "partial drawings are permitted" and that drafts on the credit are "at sight." The LOC indicates that the documents required to draw on the credit include the "beneficiary's signed and dated statement reading: 'we are drawing against standby letter of credit number S407707 and hereby certify that KB Gear Interactive, Inc. has failed to pay invoice(s) within forty five (45) days invoice date per purchase order number 764 dated 3.27.00 with addendum and terms and conditions' " along with copies of invoices marked "unpaid." The LOC also indicates that "all drafts must state" the letter of credit number and the name of the issuing bank. The LOC expired by its terms on December 31, 2000.

On December 28, 2000, Vince Riccio, All American's corporate credit manager, submitted a letter ("the Draw Letter") to Wells Fargo for the purpose of drawing against the LOC (Complaint Exhibit B). The Draw Letter does not refer to "All American Semiconductor" by name; the letterhead, however, contains a logo for "All American" and includes the Miami address listed for All American in the LOC. The Draw Letter was properly addressed to Wells Fargo and referenced the appropriate number for the LOC. The Draw Letter stated that "[w]e are drawing against Standby Letter of Credit number S407707 and hereby certify that KB Gear Interactive, Inc. has failed to pay invoice [sic] within forty five (45) days from invoice date per

---

[1] Wells Fargo argues that a letter of credit is not a contract and that the dishonor of a documentary presentation related to a letter of credit cannot support a claim for breach of contract. Although no Minnesota authority explicitly supports that conclusion, All American does not contest the point, and the Court accordingly will grant Wells Fargo's motion to dismiss the claim for breach of contract. The discussion in this Order will be limited to issues related to All American's claim for wrongful dishonor of the letter of credit.

purchase order number 764 dated March 27, 2000, with addendum, terms and conditions." Riccio enclosed with the Draw Letter a copy of the LOC; a document relating to KB Gear which, according to Riccio, "show[ed] a balance due of $1,715,111.14"; and copies of invoices to KB Gear marked "unpaid." Those invoices refer to "All American Semiconductor" at a Chicago rather than a Miami address and to "All American Semiconductor of Minnesota, Inc."

According to the Complaint, Wells Fargo originally advised All American, apparently by telephone, on January 3, 2001, that All American's attempted draw was untimely. On the same day, January 3, 2001, Wells Fargo faxed All American a letter (Complaint Exhibit C) acknowledging receipt of the Draw Letter and other documents on December 29, 2000, but denying payment for three other reasons: the documentary presentation did not include the name for the beneficiary listed in the LOC, the documentary presentation did not include a "draft," and the documentary presentation overdrew the credit limit of the LOC. In its motion papers, Wells Fargo admits that All American's documentary presentation was timely but maintains that each of the three grounds asserted in its January 3, 2001, letter was independently sufficient to justify its refusal to honor All American's attempted draw. All American argues that none of the grounds Wells Fargo relies upon in fact supported a rejection of All American's documentary presentation.[2]

II.

Minnesota follows the rule imposing a duty of strict compliance upon parties to letter of credit transactions. Airlines Reporting Corp. v. Norwest Bank, N.A., 529 N.W.2d 449, 452 (Minn.Ct.App. 1995); LeaseAmerica Corp. v. Norwest Bank Duluth, N.A., 940 F.2d 345, 348 (8th Cir. 1991). See also Minn.Stat. § 336.5-108(a) (noting that an issuer of a letter of credit

[2] All American also argues that Wells Fargo is precluded from relying upon the grounds listed in the January 3, 2001, letter because Wells Fargo did not state those grounds in its first oral notice to All American and because Wells Fargo unreasonably delayed in communicating those grounds to All American. Because the Court holds that none of the grounds Wells Fargo relied upon justified denial of All American's documentary presentation, the Court need not reach the waiver and delay issues All American raises.

must honor a documentary presentation that "appears on its face strictly to comply with the terms and conditions of the letter of credit"). To draw on the LOC, then, All American's documentary presentation must have conformed to the terms of the LOC in accordance with the strict compliance standard. The official comments on Minn.Stat. § 336.5-108, however, caution that "strict compliance" is not equivalent to "slavish conformity." Id. at cmt. 1. Distinguishing between "strict compliance" and "slavish conformity" in practice is not an easy matter. Courts applying the strict compliance standard have not been equally tolerant of errors and omissions in a documentary presentation, and a corresponding inconsistency exists in the results of cases with similar facts. See Voest-Alpine Trading USA Corp. v. Bank of China, 167 F.Supp.2d 940, 946-47 (S.D. Tex. 2000) (citing cases and discussing various approaches to the strict compliance standard). The Voest-Alpine court advocated for a "common sense, case-by-case approach" to evaluating the significance of errors or omissions in a documentary presentation, id. at 947, and held that a documentary presentation meets the strict compliance standard if the submitted documents taken as a whole "obviously relate to the transaction" for which the bank issued the letter of credit. Id. This sort of common sense approach best fits the purposes underlying the strict compliance standard, so the Court will use that approach in evaluating the documentary discrepancies Wells Fargo relies upon.

A.

Wells Fargo contends, first, that it rejected All American's documentary presentation because that presentation failed properly to identify the beneficiary named in the LOC. The Draw Letter referred to "All American" rather than to "All American Semiconductor," and according to Wells Fargo the omission of the last word in the corporate name creates confusion as to whether the "All American" demanding payment is a different entity than the "All American Semiconductor" named as the beneficiary. Courts have upheld a bank's refusal to pay under a letter of credit when the documentary presentation changes a word in the beneficiary's name, Barnett Bank of S. Fla., N.A. v. Westbrook Atkinson Realtors, 564 So.2d 570, 571 (Fla.Dist.Ct.App. 1990), or when a typographical error in the documentary presentation has the

effect of changing a word in the beneficiary's name, Beyene v. Irving Trust Co., 762 F.2d 4, 6 (2nd Cir. 1985), such that the name of the party attempting to draw on the letter of credit appears to be different than the party named as the beneficiary. All American, on the other hand, notes that its proper name and address appear at various places in the documentary presentation and argues that this information identified All American as the beneficiary with sufficient specificity. In support of its position, All American cites cases holding that a typographical error in a beneficiary's documentary presentation does not violate the strict compliance standard when the correct information exists elsewhere in the documentary presentation and the error otherwise could not have misled the bank. New Braunfels Nat'l Bank v. Odiorne, 780 S.W.2d 313, 318 (Tex.App. 1989); Am. Airlines, Inc. v. FDIC, 610 F.Supp. 199, 201 (D. Kan. 1985).

This case, unlike most other name discrepancy cases, involves no typographical error, and Wells Fargo's argument exaggerates the potential for confusion resulting from All American's use of an abbreviated or shortened version of its corporate name, especially when the full name of the corporation appears elsewhere in the documentary presentation. Although any number of businesses may use the phrase "All American" in their corporate name, as Wells Fargo suggests, many businesses also shorten their corporate name for the sake of convenience when conducting business and conduct business from more than one location. The Draw Letter included the address for All American listed in the LOC, and the invoices included with the documentary presentation included All American's full name as listed in the LOC, albeit at a different address. The invoices, furthermore, all name KB Gear as the customer. Taking all the information in All American's documentary presentation in context, the possibility that the "All American" making the presentation differs from the beneficiary of the LOC, or that the documentary presentation refers to a transactions other than those contemplated in the LOC, is virtually nil. Wells Fargo did not properly reject the documentary presentation based on a discrepancy in the beneficiary's name because the documentary presentation contains no inconsistencies and when taken as a whole identifies All American as the beneficiary.

B.

Wells Fargo's second reason for rejecting All American's documentary presentation is that the presentation failed to include a "draft." All American argues that it need not have included a draft because a draft is part of an "alternate payment mechanism" contemplated in the LOC that does not apply when, as here, All American submitted documents directly to Wells Fargo. The LOC, however, does not specifically mention alternative methods of payment, and the language of the LOC does not show "a definite undertaking" on the part of Wells Fargo to honor different types of documentary presentations under different circumstances. See Minn.Stat. § 336.5-102(10) (defining "letter of credit"). A fair reading of the LOC indicates that, regardless of the location of presentation, the beneficiary as part of its documentary presentation must present a sight draft containing the LOC number and the name of the issuing bank.

All American argues in the alternative that the Draw Letter is a "draft," and that contention has more merit. Although neither the LOC nor the applicable law defines "draft,"[3] the parties agree generally that a "draft" in this context is an unconditional request for the payment of money. The Draw Letter states, in accordance with the LOC, that "we [All American] are drawing against" the LOC. Wells Fargo insists that the "we are drawing against" phrase does not meet the requirements of a draft because the phrase is a declarative statement of fact, not an imperative order to pay. But All American's stated present intent to draw against the LOC communicates a corresponding intent to require Wells Fargo to pay under the LOC; All American cannot draw unless Wells Fargo also pays. The only case Wells Fargo cites in support of its position, Bounty Trading Corp. v. S.E.K. Sportswear, Ltd., 370 N.Y.S.2d 4 (N.Y.App.Div. 1975) (per curiam), held that a collection letter was not equivalent to a sight draft when that letter was not an unconditional order to pay money, contained instructions regarding payment not contained within the letter of credit, and lacked a signature the letter of credit required Id. at 6.

---

[3] Wells Fargo cites to the definition of "draft" applicable to negotiable instruments codified in Minn.Stat. § 336.3-104(e). That definition, however, does not apply in letter of credit transactions. Minn.Stat. § 336.5-101 cmt. 11.

Given the number of defects the court noted, Bounty Trading does not support the proposition that a collection letter does not qualify as a "draft" under any circumstances. The Draw Letter here mirrors the LOC and does not suffer from the defects listed in Bounty Trading. Because the Draw Letter's plain language makes an effective demand for payment, Wells Fargo cannot deny payment simply because that language does not meet Wells Fargo's self-imposed grammatical standards.

C.

Wells Fargo's final ground for denying payment to All American is that KB Gear's outstanding balance owed to All American, which appears in the Draw Letter and which Wells Fargo construes as a demand for that amount, exceeds the $1.5 million limit of the LOC. Wells Fargo suggests that a bank rightfully may reject a draft for an amount in excess of the limit of a letter of credit, citing Oriental Pac. (USA), Inc. v. Toronto Dominion Bank, 357 N.Y.S.2d 957 (N.Y.Sup.Ct. 1974), and Article 37(b) of the Uniform Customs and Practice for Documentary Credits ("UCP"), to which the LOC is subject. Those authorities, however, do not justify Wells Fargo's rejection on these facts.

Article 37(b) of the UCP provides that, unless otherwise stipulated in the letter of credit, a bank may refuse to pay invoices issued for amounts exceeding the limit of the letter of credit. The Oriental Pacific court relied on that rule in upholding a bank's rejection of a documentary presentation when the invoice upon which the draft was based exceeded the limit of a letter of credit. 357 N.Y.S.2d at 958. At least one court, however, has distinguished Oriental Pacific on facts similar to those at issue here. See Atari, Inc. v. Harris Trust & Savings Bank, 599 F.Supp. 592, 597 (N.D. Ill. 1986) (reasoning that Article 37(b) does not apply to letters of credit covering a series of transactions with multiple invoices rather than a single transaction), aff'd in part and rev'd in part on other grounds, 785 F.2d 312 (7th Cir. 1986) (unpublished order opinion). The LOC also provides for partial draws and indicates that the "maximum" credit available is $1.5 million. Given the LOC's explicit contemplation of multiple invoices and the cap on Wells

Fargo's liability, All American may submit invoices in excess of the credit limit without risking rejection. See Fiat Motors of N. Am., Inc. v. Mellon Bank, N.A., 649 F.Supp. 245, 252-53 (W.D. Pa. 1986) (holding that, if a beneficiary submits invoices exceeding the limit of a letter of credit, the bank must pay up to the credit limit when the letter of credit states that the bank's liability "shall not exceed" the limit), aff'd, 827 F.2d 924 (3rd Cir. 1987). See also Atari, 599 F.Supp. at 597 (noting that the UCP contains no bar to submitting invoices in excess of the beneficiary's draft).

Wells Fargo acknowledges that the invoices All American submitted may exceed the credit limit but maintains that the statement of the invoice total in the Draw Letter constitutes a demand for payment in excess of the credit limit. Wells Fargo cites no authority in support of the proposition that a draft for an amount exceeding the credit limit justifies rejection of the beneficiary's presentation.[4] Even assuming this proposition to be true, the Draw Letter does not demand payment of KB Gear's total outstanding balance; it merely states what that balance is. If the total of the invoices submitted does not justify rejection of the presentation, including that total in the Draw Letter also does not justify rejection.

III.

For the foregoing reasons, the Court hereby makes the following

**ORDER**

1. Defendant Wells Fargo's motion to dismiss is GRANTED with respect to Count I of the Complaint. Count I of the Complaint is DISMISSED with prejudice.

2. Defendant Wells Fargo's motion to dismiss is DENIED in all other respects.

---

[4] Wells Fargo cites Oriental Pacific in support of this proposition, but the draft in Oriental Pacific did not in fact exceed the limit of the letter of credit. 357 N.Y.S.2d at 958.

3. The Court believes that this Order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). If Defendant Wells Fargo elects to appeal from this Order, and if the Court of Appeals permits Wells Fargo to take an appeal, further proceedings in this Court shall be stayed pending resolution of the appeal. Id.

Dated: March 7, 2002

DONALD D. ALSOP, Senior Judge
United States District Court